# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BLUEFIELD DIVISION

| | |
|---|---|
| **DAVID LEE WILEY,** | ) |
| **Plaintiff,** | ) |
| v. | ) CIVIL ACTION NO. 1:07-00221 |
| **MICHAEL J. ASTRUE,** | ) |
| **Commissioner of Social Security,** | ) |
| **Defendant.** | ) |

## M E M O R A N D U M   O P I N I O N

This is an action seeking review of the decision of the Commissioner of Social Security denying Plaintiff's application for Disability Insurance Benefits (DIB), under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. This case is presently pending before the Court on the parties' cross-Motions for Judgment on the Pleadings. (Document Nos. 12 and 18.) Both parties have consented in writing to a decision by the United States Magistrate Judge. (Document Nos. 7 and 8.)

The Plaintiff, David Lee Wiley (hereinafter referred to as "Claimant"), filed an application for DIB on October 25, 2004 (protective filing date), alleging disability as of May 31, 2004, due to hearing loss and being a slow learner. (Tr. at 11, 51-53, 68, 71.) The claim was denied initially and on reconsideration. (Tr. at 11, 35-36, 41-43.) On February 23, 2006, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 37.) The hearing was held on October 16, 2006, before the Honorable Gordon R. Malick. (Tr. at 197-223.) By decision dated November 15, 2006, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 11-17.) The ALJ's decision became the final decision of the Commissioner on February 9, 2007, when the Appeals Council denied Claimant's request for review. (Tr. at 4-6.) On April 4, 2007, Claimant brought the present

action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 1.)

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2006). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.

20 C.F.R. §§ 404.1520(f), 416.920(f) (2006). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since his alleged onset date. (Tr. at 13, Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from bilateral hearing loss, limited intellectual capacity, and past alcohol abuse (currently in remission), which were severe impairments. (Tr. at 13, Finding No. 3.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 14, Finding No. 4.) The ALJ then found that Claimant had a residual functional capacity for medium exertional work, "subject to various physical, environmental, and mental/intellectual limitations." (Tr. at 14, Finding No. 5.) The ALJ did not identify the particular limitations. At step four, the ALJ found that Claimant was capable of performing his past relevant work as a forklift machine operator. (Tr. at 15, Finding No. 6.) Alternatively, on the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearing, the ALJ concluded at step five that Claimant could perform jobs such as a cleaner/janitor and laundry worker, at the light level of exertion. (Tr. at 16-17, Finding No. 10.) On these bases, benefits were denied. (Tr. at 17, Finding No. 11.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

3

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is not supported by substantial evidence.

Claimant's Background

Claimant was born on June 20, 1959, and was 47 years old at the time of the administrative hearing. (Tr. at 15, 51, 201.) Claimant completed the twelfth grade and received a Certificate of Attendance from an ungraded high school offering special education classes. (Tr. at 75, 201, 211.) The ALJ determined that Claimant was illiterate, but was "able to communicate in English, subject to using his hearing aid and avoiding vibrations and excessive background noise." (Tr. at 16, Finding No. 8.) In the past, he worked as a forklift machine operator and bottling worker packager. (Tr. at 15, 72-73, 77-83, 207.)

The Medical Record

The Court has reviewed all the evidence of record, including the medical evidence, and will discuss it below in relation to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision

Claimant first alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in finding that Claimant was capable of returning to his past relevant work as a forklift machine operator. (Document No. 15 at 10-11.) Claimant contends that the ALJ made a "grievous error in analyzing and citing the record" regarding the VE's responses to the ALJ's hypothetical questions as to whether Claimant was capable of performing his past relevant work with certain limitations. (Id.) The Commissioner notes that the VE's testimony with regard to this issue was inaudible, but alleges that any error the ALJ may have committed at step four of the sequential analysis is harmless, and that the ALJ properly determined at step five that Claimant could perform other work. (Document No. 18 at 12-13.) Nevertheless, the Commissioner asserts that because Claimant has not alleged that his intellect or hearing deteriorated after he left his past job, then there is no reason to find that Claimant could not perform his past work. (Id. at 12.)

Claimant next alleges that the ALJ erred in finding that Claimant was capable of performing other work identified by the VE because he failed to address conflicts between the cleaner and janitor jobs and the hypothetical presented to the VE. (Document No. 15 at 11-13.) Specifically, Claimant notes that the VE testified that Claimant's reading limitations were not a significant factor regarding the cleaner position because he could visually identify hazardous materials by a warning symbol. (Id. at 12.) Claimant asserts however, that the VE did not "address the necessity for reading directions for application of potentially hazardous materials, which perhaps would include specific written warnings as to situation[s] that need to be avoided in order to avoid creating hazards." (Id.) Claimant contends that the VE's acknowledgment that the cleaner/janitor job involves some level of reading product descriptions or instructions runs afoul to the ALJ's hypothesized limitation of

tasks without written reports or directions. (Id.)

Regarding the laundry worker job, Claimant alleges that the VE testified that such job involved a moderate level of noise, which was contrary to the ALJ's hypothesized limitation of no ambient noise. (Document No. 15 at 12-13.) In his decision, the ALJ determined that Claimant should avoid "excessive background noise and vibrations." (Tr. at 13.) Claimant contends that the wording of this limitation arose in the decision and was not part of the limitations presented to the VE. (Id.) Accordingly, Claimant alleges that the ALJ failed to "provide adequate explanation or analysis to address the issues raised in [the VE's] testimony." (Id.)

The Commissioner asserts that the ALJ properly relied on the VE's testimony. (Document No. 18 at 12-13.) The Commissioner asserts that the VE testified that the laundry worker job had moderate noise and that the cleaning job required the ability to recognize symbols denoting dangerous chemicals in the cleaning products. (Id. at 13.) Because the ALJ presented hypothetical questions to the VE that contained all of Claimant's limitations that were supported by the evidence, "the ALJ was justified in his reliance on the vocational expert's opinion regarding available jobs." (Id.)

Finally, Claimant alleges that the ALJ erred in analyzing Claimant's severe intellectual impairments. (Document No. 15 at 13-16.) Claimant notes that a significant factor in the ALJ's discrediting of his intellectual limitations was based on his past relevant work as a forklift operator, despite the VE's testimony, as alleged above, that he could not perform this specific past work. (Id. at 14.) He asserts that the ALJ erred in finding that the fact that Claimant ate his meals at his sister's house and had someone take him shopping demonstrated a "greater level of intellectual functioning," because such activities "point to the lack of independent functioning and dependence

with which [Claimant] operates." (Id.) Claimant alleges that the opinions of Mr. Morello, a consultative examiner, run afoul of the ALJ's assessment because Mr. Morello opined that Claimant's social functioning was severely deficient and his ability to maintain attention, concentration, and persistence was moderately deficient. (Id.) Claimant further contends that the ALJ erred in assessing his intellectual impairment under § 12.05 of the Listing of Impairments. (Id. at 15-16.) Claimant asserts that his IQ scores met the requirements of § 12.05 and that his hearing loss constituted a physical impairment that imposed additional and significant work related limitations of function. (Id. at 15.) He further asserts that the fact that Claimant was unable to return to his past work "supports a finding of an additional work related limitation as required under 12.05(c)." (Id. at 16.)

The Commissioner asserts that the "objective medical evidence in this case simply does not support a finding of totally disabling physical or mental impairments, singly or in combination." (Document No. 18 at 8.) The Commissioner first points out that Claimant did not allege mental retardation at the time of his DIB application, but now contends that he satisfied Listing 12.05, Mental Retardation. (Id.) Nevertheless, the Commissioner concedes that the record contains IQ scores meeting the criteria of Listing 12.05B or C, but asserts that Claimant did not have the requisite deficits in adaptive functioning because he engaged in gainful work activity for twenty-six years. (Id. at 9-10.) The Commissioner notes that Clamant worked a semi-skilled job for twenty-six years, and performed activities such as weeding his lawn, fishing, washing dishes, mowing grass, riding four-wheelers, camping, listening to ball games, and going to blue-grass festivals. (Id. at 10.) Furthermore, Dr. Brezinski rated Claimant with a global assessment of functioning of 55, indicating only moderate limitations in functioning, and Dr. Morello noted only that his recent memory and

concentration were moderately deficient; all other factors were rated as normal. (Id. at 10-11.)

The Commissioner further asserts that the ALJ properly analyzed Claimant's mental impairment in determining his residual functional capacity by limiting him to simple tasks, with no written reports or directions, detailed tasks, or communication with the public. (Id. at 11.) Furthermore, the Commissioner asserts that the ALJ determined that Dr. Brezinkski's opinion was unsupported by and inconsistent with the evidence; The ALJ's decision is consistent with the opinion of the state agency medical consultant. (Id.)

Analysis

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.* (1)Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in

>which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
>       (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.
>       (4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[1] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the

---

[1] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation , each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

It is clear upon a reading of the decision that the ALJ failed to perform an appropriate analysis of the evidence pertaining to Claimant's mental impairments and document his findings utilizing the special technique discussed above. Accordingly, the ALJ's determination is not supported by substantial evidence and remand is therefore warranted.

Without conducting a rating analysis, the ALJ determined that although Claimant had a severe limited intellectual capacity, his "long history of semi-skilled work on the forklift machine and frequent interaction with his immediate family (with regular suppers at sister's house and frequent shopping trips) show a greater level of intellectual and social interaction. Likewise, he

indicates that he regularly cuts grass and uses a weed eater to earn a small amount of extra cash."[2] (Tr. at 14.) At step three of the sequential analysis, the ALJ noted that Claimant's "intellectual capacity is greater than the mental retardation described in § 12.05 of the Listing of Impairments, as evidenced by his ability to learn semi-skilled work on the forklift machine." (Tr. at 14.) The ALJ did not explain his § 12.05 analysis. The ALJ must accompany his decision with sufficient explanation to allow a reviewing Court to determine whether the Commissioner's decision is supported by substantial evidence. "[T]he [Commissioner] is required by both the Social Security Act, 42 U.S.C. § 405(b), and the Administrative Procedure Act, 5 U.S.C. § 557(c), to include in the text of [his] decision a statement of the reasons for that decision." Cook v. Heckler, 783 F.2d 1168, 1172 (4th Cir. 1986). The ALJ's "decisions should refer specifically to the evidence informing the ALJ's conclusion. This duty of explanation is always an important aspect of the administrative charge . . . ." Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir. 1985). The United States Court of Appeals for the Fourth Circuit has stated that in Social Security cases, "[w]e cannot determine if findings are unsupported by substantial evidence unless the Secretary explicitly indicates the weight given to *all* of the relevant evidence." Gordon v. Schweiker, 725 F.2d 231, 235 (4th Cir. 1984) (emphasis added). It is clear that the ALJ did not accompany his step three finding with sufficient explanation to allow this Court to determine whether his decision is supported by substantial evidence.

Furthermore, in assessing Claimant's pain and credibility, the ALJ noted the requirements

---

[2] Claimant's counsel asserts that he could find no reference in the record to Claimant having done yard work to earn money. (Document No. 15 at 14.) The Court notes that Dr. Brezinski's report reflects Claimant's statement that he mowed "grass for his brother and one cousin for spending money." (Tr. at 189.)

of the applicable law and Regulations with regard to assessing pain, symptoms and credibility, but failed to provide any rationale for his findings; he did not analyze each factor set forth in 20 C.F.R. § 404.1529(c)(3). The ALJ's pain and credibility analysis consists of only the following three paragraphs:

> The documentary medical evidence, the testimony of an impartial vocational expert, and even his own testimony regarding daily activities do not support claimant's allegations regarding the extent of his limitations. After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.
>
> Subject to avoiding excessive background noise and vibrations, and using his hearing aids, the claimant is able to understand most speech. He does not know how to read or write but can rely on simple pictograms to avoid hazards like poisonous chemicals.
>
> As for the opinion evidence, the record supports the testimony and opinions of the vocational expert at the hearing regarding the claimant's abilities to perform simple unskilled light work subject to avoiding excessive background noise and vibrations, and using his hearing aids.

(Tr. at 15.)

In view of the foregoing, the Court finds that the ALJ did not follow the special technique, and failed to weigh the evidence of record pertaining to all of the functional limitations in his decision. The ALJ failed to rate the functional limitations as called for in the Regulations. Furthermore, the ALJ failed to explain his analysis of § 12.05 of the Listing of Impairment and his pain and credibility assessment. Though Claimant did not allege mental retardation as a disabling condition in his DIB applications, the ALJ nevertheless found a severe limited intellectual capacity and noted that he considered this impairment under § 12.05 of the Listing of Impairments. The ALJ therefore, was required to perform a complete and thorough analysis of Claimant's severe mental

impairment. The Commissioner argues that the record does not support significant limitations on Claimant's ability to perform basic mental functions, as primarily evidenced by his ability to have maintained employment for twenty-six years. Although the Court might be able to come to this conclusion, it should not do so where the ALJ has not properly explained the determination in his decision. The ALJ was required to spell out his findings respecting the functional limitations in determining whether Claimant's impairments were severe. In the instant case, the ALJ's decision lacks a thorough explanation in more than one respect. As such, the undersigned finds that the ALJ's decision is not supported by substantial evidence and this case must be remanded to the Commissioner for full consideration of the evidence pertaining to Claimant's mental impairments in accordance with the prescribed special technique.

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is not supported by substantial evidence. Accordingly, by Judgment Order entered this day, the Plaintiff's Motion for Judgment on the Pleadings (Document No. 12.) is **GRANTED**, Defendant's Motion for Judgment on the Pleadings (Document No. 18.) is **DENIED**, the final decision of the Commissioner is **REVERSED**, and this matter is **REMANDED** to the Commissioner pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further administrative proceedings and is **DISMISSED** from the active docket of this Court.

The Clerk of this Court is directed to send a copy of this Memorandum Opinion to counsel of record.

ENTER: September 26, 2008.

R. Clarke VanDervort
United States Magistrate Judge